**Rodric GILSTRAP**

v.

**SYNALLOY CORPORATION, INDUSTRIAL PIPING SUPPLY COMPANY DIVISION.**

Civ. A. No. 74–336.

United States District Court, M. D. Louisiana.

March 15, 1976.

Eugene R. Groves, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for plaintiff.

James H. Hynes, Hynes & Gueymard, Baton Rouge, La., for defendant.

E. GORDON WEST, District Judge:

Rodric Gilstrap institutes this action to recover overtime compensation allegedly due him under the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. Jurisdiction of this matter is conferred upon the Court by the provisions of 28 U.S.C. § 1337.

Plaintiff claims that during his employment with Synalloy Corporation, he worked numerous hours in excess of the forty hour work week prescribed in 29 U.S.C. § 207(a). He seeks compensation for these hours at the rate of one and a half times his basic wage rate, an equal amount in liquidated damages, and reasonable attorney fees, all as specifically provided in the Act, 29 U.S.C. § 216(b).

Defendant admits its status as an employer covered under the terms of the Act. It contends, however, that plaintiff's duties while in its employ qualified him as an executive and/or administrative employee exempt from the provisions of the Act. The Court concludes that Mr. Gilstrap's duties did not satisfy the requirements of the executive employee exemption. However, the Court finds that Mr. Gilstrap was, at all relevant times during his employment with defendant, an administrative employee within the meaning of the Act, and therefore exempt from its protections.

Plaintiff was employed by Synalloy on November 15, 1973, to implement a new method of inventory control. This new method was necessary because of shortages which had periodically appeared in defendant's inventory at their Baton Rouge office. Mr. Love, the branch manager in Baton Rouge, and Mr. Hane,

the president of the Industrial Piping Supply Company Division of Synalloy (IPSCO), both testified that plaintiff was hired because they felt that their present office manager lacked the business skill necessary to solve the inventory problem. Plaintiff had extensive business experience, and was thought to possess the skill necessary to prevent a reoccurrence of the shortages. Plaintiff's salary was initially $1,060.00 per month. On July 1, 1974, this was raised to $1,160.00 per month.

Though plaintiff's position was untitled, the evidence clearly showed that he was the person primarily responsible for the supervision of the inventory, which comprised approximately seventy to seventy-five per cent of Synalloy's physical assets in Baton Rouge. Plaintiff's duties changed somewhat during his employment with Synalloy. From November 15, 1973 to February of 1974, plaintiff was occupied almost totally with implementation of the new inventory control system. In February, as a result of personnel changes at the Baton Rouge office, plaintiff relinquished the more clerical aspects of inventory control to a new employee, and assumed as a portion of his duties the job of inside salesman to replace a departed employee. In August of 1974, another inventory discrepancy was discovered. As a result, plaintiff and Mr. Love, the branch manager, were terminated on August 27, 1974.

As noted above, defendant contends that plaintiff was exempt from the Act while in their employ under the provisions of 29 U.S.C. § 213(a)(1). That section provides, in pertinent part:

"(a) The provisions of section 206 . . . and section 207 of this title shall not apply with respect to—

(1) any employee employed in a bona fide executive, administrative, or professional capacity . . . (as such items are defined and delimited from time to time by regulations of the Secretary . . .)"

It should be emphasized that these exemptions from the Fair Labor Standards Act are to be narrowly construed against

the employer. *A. H. Phillips, Inc. v. Walling,* 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945); *Mitchell v. Kentucky Finance Co.,* 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959). Furthermore, the employer carries the burden of proving the applicability of these exemptions to a given employee. *Idaho Sheet Metal v. Wirtz,* 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966); *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

■ These exemptions are defined in regulations promulgated, pursuant to Congressional authority, by the Secretary of Labor, and are presumed valid unless shown to be in conflict with the provisions of the Act itself. *Brennan v. City Stores, Inc.,* 479 F.2d 235, 21 W.H. Cases 69 (5th Cir. 1973). No such showing has been attempted in this case.

According to the regulations, there are two standards which the Court may employ in determining whether an employee is exempt from the provisions of the Act. These standards are generally referred to as the "long test" and the "streamline test." The "streamline test" contains somewhat less stringent requirements for exemption than the "long test," and is applicable only to high salaried employees. That is, in order for the streamline test to be applicable, an employee must be "compensated on a salary basis" at a rate greater than a minimum stated in the regulations. At all times pertinent to this litigation, the salary threshold for the streamline test was $200 per week. Since the institution of this suit, this figure has been raised to $250 per week.

The evidence in this case establishes that Mr. Gilstrap was compensated on a salary basis, and that his salary, $1,060.00 per month at the lowest level, was in excess of the minimum for high salaried employees. Consequently, plaintiff's status under the Act should be determined according to the streamline test for each exemption.

■ An employee exempt as an executive employee under the streamline test is one:

". . . whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of two or more other employees therein . . ." 29 C.F.R. 541.-1(F).

In order to bear its burden of proof as to this exemption, the defendant had to establish that each of these requirements were satisfied. Of particular importance to this litigation, defendant had to establish that plaintiff had the management of the enterprise or a customarily recognized department as his primary duty. It has not done so. Plaintiff certainly did not manage the entire enterprise. The phrase "a customarily recognized department," according to Section 541.-104:

". . . is intended to distinguish between a mere collection of men assigned from time to time to a specific job or series of jobs and a unit with permanent status and function. In order properly to classify an individual as an executive he must be more than merely a supervisor of two or more employees; nor is it sufficient that he merely participates in the management of the unit. He must be in charge of and have as his primary duty the management of a recognized unit which has a continuing function."

At no time during his tenure with Synalloy did plaintiff manage such a department. The testimony indicated that in the second phase of plaintiff's employment at least two employees considered plaintiff their supervisor. However, these employees did not comprise a unit. They were a "mere collection" of individuals who might be available to perform specific tasks at plaintiff's direction. There was no recognized department which plaintiff had the duty to manage. Consequently, plaintiff does not satisfy all the requirements for the executive exemption.

The requirements for the administrative exemption are contained in 29 C.F.R. 541.2(e)(2). Plaintiff would be

exempt under that section if: (1) his primary duty consisted of performing work directly related to management policies or general business operations of his employer, and (2) these tasks included work requiring the exercise of discretion and independent judgment.

"Directly related to management policies," according to Section 541.205(a), "describes those types of activities relating to the administrative operations of a business" as distinguished from production or sales. This phrase also "limits the exemption to persons who perform work of substantial importance to the management or operation of the business." The evidence in this case undeniably established that plaintiff performed work "directly related to management policies," as that term is defined in the regulations, while employed with Synalloy. The true point at issue is whether this work constituted his "primary duty" during his entire period of employment with Synalloy.

■ As noted above, plaintiff's employment may be subdivided into two phases. From the beginning of his employment in November of 1973 until February of 1974, plaintiff was, in his own estimation, primarily concerned with the formulation and implementation of the new system of inventory control. His "primary duty" then was an operation of great significance to the management of the business, as it involved the administration of Synalloy's most important physical asset. In connection with his control over the inventory, plaintiff had considerable authority to requisition products and supplies. It was the testimony of Mr. Hane, the president of IPSCO, that plaintiff had equal authority in this respect as did the branch manager, Mr. Love. During the course of the trial, numerous stock purchase orders issued under Mr. Gilstrap's name were introduced into evidence. Some of these were signed by other employees for him. Also introduced into evidence were two company group insurance forms. Plaintiff listed his position on both as "purchasing agent." This evidence indicates that, at least at the time he filled out these forms, plaintiff believed that he possessed purchasing and requisitioning powers.

However, plaintiff now contends that his duties in inventory control were merely clerical in nature, and that he possessed no authority to requisition products. His testimony is substantiated on this point by that of Mr. Love. However, this testimony is simply not worthy of belief. Mr. Gilstrap, a man of considerable experience in his field, was hired at an executive's salary to apply his experience to a serious problem faced by IPSCO. It is inconceivable that the company, after having done so, would limit his activities in solving this problem to mere clerical duties. While denying his authority to requisition products, plaintiff could not explain why his signature appeared on the requisition forms if his approval of requisitions meant nothing. The testimony of the other witnesses, on the other hand, indicated that Mr. Gilstrap's authority in requisitioning was accepted, both by the other employees at the Baton Rouge branch, and by those at the main office in Charlotte, North Carolina. Mr. Gilstrap's present ignorance of his own authority, while convenient, is not convincing. The conclusion is inescapable that plaintiff did possess the authority to requisition as asserted by the company. Since these duties were admittedly his primary duty during the first phase of his employment, it clearly follows that his primary duties were administrative in nature.

■■ In order to satisfy the requirements of the administrative exemption, such duties must include work requiring the exercise of independent judgment and discretion. The important duties performed by the plaintiff appear to require the exercise of independent discretion of necessity. Plaintiff contends, however, that Mr. Love's approval was necessary on everything he did, and that consequently, plaintiff could not be said to exercise any independent judgment. Even if this doubtful factual allegation were true, the legal result asserted by

plaintiff would not necessarily follow. According to 29 C.F.R. 541.207(e)(1):

". . . decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment within the meaning of the regulations in Subpart A of this part."

Therefore, even if Mr. Gilstrap's actions were, as he contends, subject to review by Mr. Love, he was nonetheless exercising independent judgment within the meaning of the Fair Labor Standards Act. Plaintiff's duties in the initial part of his employment thus satisfy all the requirements of the streamline test for exemption as an administrative employee, and therefore he must be considered exempt for that period.

In February of 1974, personnel changes at IPSCO's Baton Rouge branch apparently altered plaintiff's duties somewhat. He relinquished the more clerical aspects of inventory control to a new employee, Mrs. Theresa Davis, and assumed at least some responsibilities of an inside salesman to replace John O'Neal, who had resigned. Both of these employees had received overtime.

Precisely what portion of plaintiff's duties were occupied with inside sales after these personnel changes is a matter of controverted fact. Plaintiff, of course, contends that from February on, his duties consisted almost exclusively of inside sales, and that therefore his "primary duty" was not administrative in nature during this period. As with the other factual disputes in this case, he was supported on this point by the testimony of Mr. Love. Defendant's witnesses described the time plaintiff spent on inside sales in varying terms, from "substantial," to "not enough to amount to anything."

In resolving this dispute, and determining what plaintiff's "primary duty" was during this period, an examination of the applicable regulations is again in order. Section 541.103 states that this determination depends "on all the facts in a particular case," but that a "good rule of thumb" is that an employee who spends over fifty per cent of his time in administrative duties would satisfy the requirement. However, "time alone . . . is not the sole test." An employee who spends less than fifty per cent of his time in administrative duties would satisfy the requirement if "other pertinent factors" support a conclusion that administrative matters constitute his primary duty. These other factors include: (1) the relative importance of the administrative duties as compared with other types of duties; (2) the frequency with which the employee exercises discretionary powers; (3) his relative freedom from supervision; and (4) the relationship between his salary and the wages paid other employees for the same type of non-exempt work.

In Mr. Gilstrap's case, these pertinent factors clearly indicate the applicability of the administrative exemption. During this period of February–August 1974, plaintiff still had primary charge of the inventory control process. He retained his authority to requisition supplies and stock. In addition to retaining these important duties, plaintiff began to assume duties previously performed by the office manager, such as signing time sheets, interviewing prospective employees and the like. All these duties were significantly more important than the duties of inside salesman. It is certainly apparent that discretion and independent judgment would frequently be required in the performance of these duties. Concerning plaintiff's freedom from supervision, all witnesses at trial indicated that plaintiff set his own hours, arriving as much as an hour or two hours after the other employees, and took a lunch hour at least twice as long as they did. The testimony of all wit-

nesses except plaintiff and Mr. Love showed that plaintiff reported directly to Mr. Love and was subject to his supervision only. Plaintiff's salary began at $1,060.00 per month. The office manager, who was concededly an administrative employee, received $200.00 *less* per month. John O'Neal whose duties as inside salesman plaintiff claims to have assumed, made approximately $575.00 per month, about half plaintiff's salary. The only person at IPSCO's Baton Rouge office whose salary exceeded plaintiff's was Mr. Love, who made only $200.00 more per month.

These factors clearly reveal that plaintiff's duty during this second phase of his employment was administrative in nature, in spite of any non-exempt duties he may have performed. The evidence did indicate that plaintiff performed the duties of inside salesman for at least a portion of his time during this period. However, there is no reason why an inside salesman who meets all the requirements for executive or administrative personnel could not be exempt from the Act. *Hodgson v. Penn Packing Co.*, 335 F.Supp. 1015 (E.D.Pa.1971). Under the facts as found by the Court, plaintiff meets all the requirements for the administrative exemption and must be considered exempt from the provisions of the Fair Labor Standards Act during both phases of his employment with this defendant.

For the above and foregoing reasons, which constitute the Findings of Fact and Conclusions of Law of this Court, judgment will be rendered against plaintiff, Rodric Gilstrap, and in favor of the defendant, Synalloy Corporation, dismissing this suit at plaintiff's cost.