**Ramon MOLINA, Plaintiff,**

v.

**SEA LAND SERVICES, INC., Defendant.**

**Civil No. 94–1248(DRD).**

United States District Court,
D. Puerto Rico.

March 18, 1998.

Nicolas Delgado–Figueroa, Puerto Nuevo, PR, for Plaintiff.

Antonio Cuevas–Delgado, Cuevas, Kuinlam & Bermudez, Hato Rey, PR, for Defendant.

**OPINION AND ORDER**

DOMINGUEZ, District Judge.

In a prior Opinion and Order dated March 31, 1997 (Docket No. 23), the court dismissed Plaintiff's claim for alleged unpaid sick leave by the employer, 29 U.S.C. § 255; the complaint may be time barred or further partially time barred depending on the date of retirement of Plaintiff. The Court further does not prejudge the affirmative defense of executive or administrator claimed by Defendant Sea Land Services, Inc. nor the allegation of defendant that the amended complaint is in reality not an FLSA claim.

---

and overtime pay under local law[1] because the sick leave claim was ordered arbitrable in a prior local court case between the same parties and because the local wage claim filed in a latter case was arbitrable pursuant to local law. *Perez v. A.F.F.*, 87 Dec. P.R. 118, 1963 WL 15028 (1963).[2] Further the court found that the wage claim was barred because the same "could have been claimed" in the first case and, hence, was barred in the second complaint by the doctrine of *res judicata* under both federal and state principles. *Porn v. National Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir.1996); *Apparel Art Int.'l, Inc. v. Amertex Enterprises Ltd.*, 48 F.3d 576, 583 (1st Cir.1995); *Colon v. San Patricio Corporation*, 81 Dec. P.R. 242, 264, 1959 WL 13595 (1959). Plaintiff further claimed that the union and the company "acted superficially ... as to plaintiff's rights." This particular averment sounded to the court as a hybrid breach of contract duty of fair representation claim under *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) and was also dismissed because it was time barred under *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) and further because Plaintiff failed to comply with the required element that Defendant acted in an "arbitrary, discriminatory or bad faith" manner. *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

The court, however, authorized an overtime claim under the Fair Labor Standard Act, 29 U.S.C.A. § 201 et seq., from April 1993 to December 1993. Plaintiff claims he was illegally granted compensatory time under the labor contract instead of the mandated overtime pay.[3] Defendant Sea Land now moves via summary judgment request to dismiss (Docket No. 27) the overtime complaint alleging that Plaintiff is either an "executive" or a "professional" exempt employee as defined by the Secretary of Labor under the F.L.S.A. § 213(a)(1). Plaintiff has opposed

the request (Docket No. 29). The court is ready to rule.

The Court scrutinizes the request using the summary judgment standard set forth under Fed.R.Civ.P. 56.

## SUMMARY JUDGMENT STANDARD

The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997) (citing *Wynne v. Tufts Univ. Sch. of Medicine*, 976 F.2d 791, 794 (1st Cir.1992)). A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "To defeat a motion for summary judgment, the nonmoving party must demonstrate the existence of a trial worthy issue as to some material fact." *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997). "In applying this formulation, a fact is 'material' if it potentially affects the outcome of the case", *Vega–Rodriguez*, 110 F.3d at 178, and "genuine" "if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes–Irizarry*, 111 F.3d at 187. "Speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant in the face of a properly documented summary judgment motion. Moreover, even in cases where elusive concepts such as motive or intent are at issue, summary judgment may

---

1. The case was removed to this Court under Section 301 of the Taft–Hartley Law, 29 U.S.C.A. § 185 et seq. as a violation of contract complaint.

2. Under local law all potential grievance matters not specifically excluded from arbitration procedures are considered arbitrable matters.

3. This limited period is not covered by issue preclusion, since the cause of action is not covered by the time period of the first complaint. Further, F.L.S.A. complaints are not submitted to arbitration deferral. *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981).

be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996) (citations omitted).

## THE EXECUTIVE DEFENSE

The term "executive" is defined by the Secretary at 29 C.F.R. § 541.1. An executive is one who complies with the following definition:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department of subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: Provided, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20–percent interest in the enterprise in which he is employed; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week (or $130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities: Provided, That an employee who is compensated on a salary basis at a rate of not less than $250 per week (or $200 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more employees therein, shall be deemed to meet all the requirements of this section.

Plaintiff is the night time "Crane Port Engineer." He has under him a team of two employees and is responsible for keeping the employer's crane operating efficiently. A "crane" is a machine used to load and unload freight containers from Sea Land vessels.

Plaintiff easily complies with the salary criteria of $200.00 per week required by the regulation. Plaintiff earned a monthly salary that on a yearly basis amounted to in excess of $70,000.00.[4] (The contract stipulates a monthly salary of $5,213.68 in the first year of the labor contract increased to $6,120.88 in the last year of the contract. See Ex. 10 of the Statement of Uncontested Facts.[5]) Because Plaintiff is a "high salaried" employee under the regulations, he is exempt from the percentage limitation of twenty percent (20%) of manual work. *Lynn Martin v. Tango's Restaurant Inc.,* 969 F.2d 1319, 1325 (1st Cir.1992); *Donovan v. Burger King Corp.,* 672 F.2d 221, 223–24 (1st Cir.1982). A high salaried employee is also exempt from criteria (c)–(d) of 29 C.F.R. § 541.1 (authority to hire and fire other employees and regularly exercising discretionary powers). *Tan-*

---

**4.** Plaintiff claims that there are dock workers that earn also $70,000.00. This may be correct, the critical distinction is if said compensation is paid on a per hour basis or on a "salary" basis not subject to reduction as in the case of the compensation of Plaintiff.

**5.** The "salary" amount may "not be subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 908, 137 L.Ed.2d 79 (1997).

*go's Restaurant Inc.*, 969 F.2d at 1325.[6] A high salaried employee must comply with the requirement that his "primary duty consists of the management of the enterprise ... and includes the customary and regular discretion of directing the work of two or more other employees." 29 C.F.R. § 541.1(f). *Tango's Restaurant Inc.*, 969 F.2d at 1325. "Primary duty" is judged on all facts. 29 C.F.R. § 541.103. Courts have determined that "the supervision of other employees is clearly a management duty." *Burger King Corp.*, 672 F.2d at 226.

Plaintiff supervised the work of two electricians:

Q: You supervise? Could we synthesize then your functions as that you are responsible for maintaining the cranes in operational conditions?

A: That is so.

Q: Okay. Do you supervise any employee?

A: We are three, two electricians and I, three when I need help, then I call them.

Q: Those electricians are SIU.

A: Of the Seafarers International Union.

...

Q: Can anybody come and give a counter order if you state to an electrician "go and fix the left belt of the motor?" Can somebody arrive and give a counter order? ...

A: No, I believe not. (Translation ours). (P. 4–5 Deposition, Ex. 21, to original Motion of Summary Judgment, Docket No. 5).

Plaintiff further reports the supervised employees when they do not work efficiently to another supervisor who relies upon the recommendations of Plaintiff. (Deposition of Plaintiff 12–13, Ex. 25 to original Request for Summary Judgment, Docket No. 5; see also Ex. 15 to current Summary Judgment, Dock-

et No. 27.) Plaintiff, therefore, satisfies the requirement of "suggestions and recommendations giving particular weight" as to hiring and firing.

These clear admissions of Plaintiff are to be considered together with the admission contained in the collective bargaining agreement describing the unit covered as one of supervisors under the meaning of the Labor Management Act of 1947.[7] Under the Labor Management Act § 2, (11), a supervisor means "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward or discipline other employees, or the responsibility to direct them...." Although Plaintiff may not be an electrician, he certainly complies with the general requirement that overall he "direct the employees" in their work and, hence, complies with the Secretary's F.L.S.A. requirement of "customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.1(f).

Plaintiff further meets the criteria of "management of the enterprise or a customarily recognized department or subdivision thereof", 29 C.F.R. § 541.1(f), in that he was in charge of the operations of the crane of Sea Land during the night shift. He further had the discretion of stopping all operations of said crane and, hence, controlled the offloading of the employer's vessels. Hence, Plaintiff complies with having discretionary management powers. Plaintiff satisfies the requisite under the "long test" of not performing manual work in excess of 20%. His work mostly consisted of the exercise of discretion and judgment using his specialized skills. Most of the time he was reading instruments in order to ascertain efficient and proper functioning of the crane. In sum, Plaintiff fully complies with the all exempt criteria (long and short test) in an "executive" capacity under 29 U.S.C. § 213(a)(1).[8]

---

6. A high salaried employee thus triggers the possibility of the employee qualifying for "executive" exempt status under the "short test" contained under the proviso of § 541.1(f).

7. The collective bargaining agreement states that: "the parties agree that all of the engineers to whom this agreement is applicable are 'super-

visors' within the meaning of the Labor Management Relations Act of 1947, as amended."

8. Plaintiff strongly emphasizes that he is not a supervisor because he in turn reports to another. The fact that a supervisor reports to another of superior rank mean loss of supervisory status. *Gilstrap v. Synalloy*, 409 F.Supp. 621, 625–625 (M.D.La.1976).

The court considers superfluous reviewing the criteria of exemption under "professional" status since the court is fully satisfied that Plaintiff is an "executive" under the regulations promulgated by the Secretary of Labor and, hence, the overtime claim cannot proceed. *Petrlik v. Community Realty Co.*, 347 F.Supp. 638 (D.Md.1972).[9]

Wherefore, Plaintiff's complaint is now dismissed in its entirety. Judgment to be issued accordingly.

IT IS SO ORDERED.

**9.** The court notes that prima facie Plaintiff satisfies the required criteria under a "professional," 29 C.F.R. § 541.3, as to salary and discretionary judgment. As a "Crane Port Engineer," Plaintiff is issued a license by the Coast Guard only after five years experience of sea time and after attending a merchant marine school. The license is renewed every five years.