Ray **MARSHALL**, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

**HENDERSONVILLE BOWLING CENTER, INC.**, a corporation, and **James D. Holder**, Individually, Defendants.

No. 78–3545.

United States District Court, M. D. Tennessee, Nashville Division.

Jan. 9, 1980.

Theresa Ball, U. S. Dept. of Labor, Nashville, Tenn., for plaintiff.

Michael W. Edwards, Hendersonville, Tenn., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WISEMAN, District Judge.

The complaint in this action was filed on November 28, 1978, under the provisions of Section 17 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.*, hereinafter called the Act, to enjoin the defendants from violating the minimum wage, overtime compensation, and record-keeping provisions of the Act. The plaintiff also sought to restrain the defendants from continued withholding of payment of minimum wages and overtime compensation due employees, together with liquidated damages and interest from the date such payments were due. The trial of this case took place on November 13 and 14, 1979. The Court having considered the record in this case, including the pleadings, the stipulation of the parties, the exhibits and statements of counsel, and being fully advised in the premises, does hereby make and enter, pursuant to Rule 52 of the Federal Rules of Civil Procedure, the following Findings of Fact and Conclusions of Law as a final adjudication of this matter:

### FINDINGS OF FACT

1. Hendersonville Bowling Center, Inc., is a Tennessee corporation incorporated on February 2, 1976. Since the date of incorporation its principal office and place of business has been located at 500 West Main, Hendersonville, Tennessee, where it is engaged in the operation of a bowling establishment consisting of bowling lanes, snack bar, nursery, and billiard rooms.

2. The defendant, James D. Holder, is, and at all times since January 1, 1975, has been a resident of Hendersonville, Tennessee. He has actively managed the Hendersonville Bowling Center since it opened in early 1975 and has personally hired all the managers for it. Since the opening of the center, James D. Holder has frequently exercised his right to hire and fire personnel, determine rates of pay of persons employed at the center, set the hours of work of persons employed at the center, and approve all major capital expenditures at the

center. He is also President of Hendersonville Bowling Center, Inc., and has held this office since the date of incorporation.

3. During the period since January 1, 1975, the defendant's employees at the aforementioned bowling establishment in Hendersonville, Tennessee, have regularly prepared and sold food which was processed, manufactured, or produced outside the state of Tennessee. These employees have also regularly handled and worked on bowling equipment, cleaning materials, chemicals, and other goods produced and manufactured outside the state of Tennessee.

4. Hendersonville Bowling Center was opened and operated as a proprietorship by James D. Holder until the incorporation of Hendersonville Bowling Center, Inc., on February 2, 1976. During the period since January 1, 1975, the defendant's Hendersonville Bowling Center establishment has had an annual gross volume of sales made and business done in excess of $450,000 (exclusive of excise taxes at the retail level).

5. The defendant, James D. Holder, President and Manager of Hendersonville Bowling Center, Inc., was, prior to the investigation out of which this lawsuit arose, previously contacted and investigated by employees of the Wage and Hour Division, U. S. Department of Labor, with regard to his construction business known as Dan Holder and Associates. The defendant, prior to the investigation out of which this lawsuit arose, paid back wages consisting of minimum wages and overtime compensation to employees of his construction business as a result of this prior investigation.

6. The defendants have had a certificate issued by the United States Department of Labor authorizing payment of subminimum wages at a specified rate to full-time students subject to conditions stated in the certificate for the period beginning January 12, 1978. Prior to January 12, 1978, the defendants had no such certificate.

7. From January 1, 1976, through January 7, 1978, the defendants paid a number of their employees wages at a rate less than the minimum hourly rate required by 29 U.S.C. § 206. The minimum wage rate required by 29 U.S.C. § 206 was not less than $2.20 an hour during the year beginning January 1, 1976; not less than $2.30 an hour after December 31, 1976, and not less than $2.65 an hour during the year beginning January 1, 1978.

8. The employees who were paid less than the then effective minimum wage, together with the minimum wages due them (exclusive of interest or liquidated damages), are as follows:

| NAME | AMOUNT DUE |
|---|---|
| John Angell | $ 15.93 |
| Skip Collier | 38.96 |
| Charlene L. Davison | 20.80 |
| Bobbie De Sheles | 18.15 |
| Donna Dixon | 25.68 |
| Lori Frazee | 14.66 |
| Daryl Lee Gray | 19.13 |
| Paulette Hamilton | 114.83 |
| Wendy Holt | 28.60 |
| Nancy Hrasna | 68.96 |
| Robin Hunter | 26.95 |
| Claire Kimbrough | 47.33 |
| Scott Lang | 19.40 |
| Cheryl Mims | 44.05 |
| Sherry Morgan | 30.68 |
| Jayne Mundy | 25.91 |
| Judy Norton | 49.74 |
| Janice T. Purvis | 21.08 |
| David Reavis | 19.05 |
| Debbie Rice | 21.47 |
| Karen Rykeley | 32.25 |
| Debbie Sells | 26.18 |
| Tammye Troutt | 24.23 |
| Sherry Turman | 49.92 |
| Laura Waits | 10.58 |
| Susan Wieshuegel | 35.11 |
| Whitney Young | 14.00 |

9. The defendants have failed to maintain records of hours worked each workday and total hours worked each workweek for James Caroland, Leland Adcock, and David Hunter. The contested issues of fact are: (1) whether these three employees, or any of them, qualify as exempt under the provisions of 29 C.F.R. §§ 541 et seq., and (2) what hours were worked by them. For the purpose of applying the regulations to the facts of employment of each employee, the Court finds:

**514**

### A. *James R. Caroland.*

James R. Caroland was employed to perform miscellaneous tasks around the establishment including routine cleaning of machines, renting equipment, operating the cash register, picking up debris and occasionally supervising student employees. The defendants employed James R. Caroland at their establishment during the pay periods ending September 2, 1977, through March 3, 1978. This employee was hired by the defendant James D. Holder and was paid at the rate of $2.75 per hour for all hours worked while he was there. With the exception of the first pay period, James R. Caroland never received time and one-half his regular rate of pay for the hours he worked in excess of 40 in a week. The defendants issued him two paychecks, the first being paid at the rate of $2.75 per hour for the first 40 hours he worked in each week (a payroll period being two weeks) and the second check being payment for the hours he worked in excess of 40 in each workweek also at the rate of $2.75 per hour. This rate of pay is evidenced by the defendants' own payroll records (Trial Exhibit No. 4) and by some of the checks issued to James R. Caroland by the defendants (Trial Exhibit No. 3). Although the defendants failed to maintain a record of the hours worked by this employee, the hours he worked can be determined by dividing $2.75 into the gross amount of each check in Trial Exhibit No. 3. The amount of back wages due this employee for the period between September 16, 1977, and March 3, 1978, is computed and set forth in Trial Exhibit No. 9 and totals $295.23 (exclusive of liquidated damages or interest).

### B. *Leland Adcock.*

The defendants first employed Leland Adcock in September of 1976 at $2.25 per hour. Effective the payroll period ending February 18, 1977, Leland Adcock was paid a salary of $150 per week by the defendants until September 16, 1977, when he began receiving the salary of $175 per week. Prior to this date Adcock cannot qualify as exempt due to the absence of the requisite weekly salary of $155. 29 C.F.R. §§ 541.-1(f), 541.2(e). Immediately prior to placing this employee on a salary, the defendants had sent him to a special school lasting approximately four weeks to learn how to repair and maintain Brunswick pin setting machines and other bowling equipment. The defendants list Leland Adcock on their payroll records as an assistant mechanic during this period of time (Trial Exhibit No. 11, at 3).

### C. *David Hunter.*

The defendants first employed David F. Hunter in April, 1975, soon after the defendants' establishment first opened. David Hunter had been employed by Brunswick Corporation and as such had participated in the construction of the defendants' bowling lanes in the setting up of the equipment for the operation of the bowling lanes. When this employee was first hired, there was another employee who also did mechanical work on these machines but approximately two weeks after the hiring of David Hunter, the other employee was discharged, leaving David Hunter the sole qualified and certified mechanic in charge of 36 pin setting machines and a number of scoring machines. No other person was certified and qualified to work on these machines until January of 1977, when Leland Adcock was sent to a four week training session on the repair and maintenance of these machines. David Hunter was continuously employed by the defendants from approximately April of 1975 until July, 1978. He was paid a salary the entire time he was employed by the defendants, as reflected by Trial Exhibit No. 2. Effective September 16, 1977, the salary of this individual was raised to $265 per week, the first time it had exceeded $250 per week.

10. Mr. Adcock and Mr. Hunter were responsible for the mechanical end of the bowling center. There were 36 pin setting machines, and at least two or more "pin chasers" were employed to work under the supervision of either Mr. Adcock or Mr. Hunter (whomever was on duty) to perform routine maintenance, rectify malfunctions and generally keep the lanes in operation. Both Mr. Adcock and Mr. Hunter were fac-

tory trained to perform major repairs on the equipment. Each exercised discretion in the ordering of necessary repair and replacement parts. Each performed only under general supervision to accomplish this mechanical function of the operation. Each supervised, set schedules for, and recommended personnel actions on the high school youths employed as "pin chasers." The testimony varied as to the percentage of time each spent in doing mechanical work as opposed to supervisory work. The Court finds the testimony of Mr. Merritt most credible when he estimated 10 percent to 15 percent of time spent in actual repair or maintenance work. Any estimate of as much as 40 percent or more would mean that the mechanical equipment of the bowling alley was "down" for that percentage of time. Since this center had only been in operation for two years or less in the relevant time periods, it is incredible to infer such a "down" percentage of relatively new equipment and the center still be profitable. Both employees understood that they were the "boss" or person in charge not only of the mechanical end of the center but of the entire operation in the absence of Mr. Merritt and Mr. Holder. Both understood their responsibility for the successful operation of the center and particularly its mechanical function. Each was subject to call in if a malfunction occurred. Each filled in at whatever jobs were necessary to maintain smooth operations. Mr. Hunter testified he was also responsible for a secretary in the absence of Mr. Merritt and Mr. Holder. Their recommendation on hiring and firing of persons under them was given great weight. Both understood that personal time off would not result in reduction of wages. Both understood they were salaried employees who would take compensatory time off in the event of call-ins and necessary overtime work.

11. For the period from February 18, 1977, until September 16, 1977, Leland Adcock was paid $150 per week. His regularly scheduled work hours during this 29 week period was: Monday through Friday—8 a.m. to 5 p.m. with 30 minutes off for lunch, and 7 a.m. to noon on Saturday. The employee testified that he worked from 10 to 16 hours a week in excess of this. This testimony was not entirely credible, but the contrary testimony gives little concrete basis for a calculation. The employee further testified that during this period, he worked extra hours for six weeks at a bowling tournament as follows: his regular schedule plus working until 9 p.m. on Friday, until 11 p.m. on Saturday, and from 7 a.m. until 11 p.m. on Sunday.

Thus, the employee contracted for 47.5 hours at $150 per week. The plaintiff insists that the regular rate per hour should be determined by dividing $150 by 47.5 for a result of $3.39 per hour. The plaintiff would then insist that the time-and-one-half rate should be applied to all hours over 40, using this base rate. This Court disagrees. There is no reason in law why an employer and employee cannot contract for a longer workweek than 40 hours, so long as the excess hours are compensated at a rate one and one-half times the regular rate, and so long as minimum wage provisions are not violated. If the parties agreed to a 47.5 hour week for $150, 7½ hours are overtime. One and one-half times the 7½ equal 11¼. This result plus the 40 hours divided into $150 contracted rate equals $2.93 for "regular" time and $4.40 for "overtime." This computation does not violate the minimum wage provisions; it honors the contract of the parties, and gives a rational basis for computation of time worked in excess of the contracted amount. The proposed computation of the plaintiff is based on pure fiction and has no rational basis in the contemplation of the parties. Neither is such a computation required by the provisions of the law.

Applying the formula to the 29 week period under consideration for Leland Adcock, the Court finds that he worked 57.5 hours (47.5 + 10) for 23 weeks and that he worked 76 hours for 6 weeks during the tournament (8.5 hours, Monday through Thursday; 12 hours on Friday, allowing 30 minutes each for lunch and supper; 15 hours each on Saturday and Sunday, allowing 30 minutes each for lunch and supper).

He has thus worked 230 hours during the 23 non-tournament weeks for which he has not been compensated; and he has worked 171 hours during the tournament for which he has not been compensated. 401 hours times $4.40 equals $1,764.40. This result is different from (and higher than) the amount calculated by the plaintiff. It is based on the proof as this Court heard it.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this action and of the defendants pursuant to 29 U.S.C. § 217.

2. Defendants are employers within the meaning of the Act. 29 U.S.C. § 203(d), (e). See *Chambers Construction Company v. Mitchell*, 233 F.2d 717 (8th Cir. 1956); *Usery v. Godwin Hardware, Inc.*, 80 CCH Lab.Cas. ¶ 33,466 (W.D.Mich.1976); *Brennan v. P. W. D. Mining Co.*, CCH Lab.Cas. ¶ 33,215 (S.D.Ohio 1974); *Wirtz v. Soft Drinks of Shreveport, Inc.*, 336 F.Supp. 950 (W.D.La.1971).

3. At all times since January 1, 1975, the defendants constituted an enterprise within the meaning of section 3(r) of the Act. 29 U.S.C. § 203(r).

4. During the period since January 1, 1975, the defendant's bowling establishment in Hendersonville, Tennessee, has constituted an enterprise within the meaning of section 3(s)(2) of the Act. 29 U.S.C. § 203(s)(2).

■ 5. In his proposed findings of fact and conclusions of law, plaintiff for the first time seeks to recover overtime compensation for David Reavis and Whitney Young. In the original complaint filed November 28, 1978, a general prayer was made for overtime compensation and liquidated damages "found by the Court to be due employees named in Appendix A hereto." Appendix A listed both David Reavis and Whitney Young along with 28 other employees. However, the "Pretrial Order" entered in this case on August 6, 1979, which supplanted the pleadings in the case, narrowed the claim and theories of the parties to three employees: David Hunter, James R. Caroland, and Leland Adcock. Plaintiff claimed the three were non-exempt and defendant's theory was that they were exempt. The "Contested Issues of Fact" portion of the pretrial order specifically limited those contested issues to (1) whether the three employees were exempt, and (2) what were the actual hours worked by each of the three. Exhibits were limited to the payroll records of these three employees.

The two additional employees, Reavis and Young, testified on behalf of defendant employer and, based on their testimony, plaintiff now also seeks a recovery as to them. This attempt by the plaintiff to go beyond the limited claims and theories of the pretrial order defeats its purpose and is patently unfair. Defenses were prepared, discovery concluded, exhibits delineated, and witnesses named on the basis of the claims and theories set out in the pretrial order. The plaintiff will not be permitted to go beyond it, and the claims for Reavis and Young will not be considered.

■ 6. Once again, in the plaintiff's proposed findings and conclusions, a proposal is made with respect to the withholding of $78 from Teal Broersmer for a shortage found in his receipts. Some proof was adduced on this point but the nature of the shortage, whether by negligence, inadvertence, or outright theft, is unclear. Plaintiff cites *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196 (5th Cir. 1972), for, the proposition that any such deduction is unlawful and violates the minimum wages provision of the Act. This Court does not read this case to so hold. To require an employer to pay wages due an employee who is indebted to the employer for an outright theft or embezzlement would be a perversion of justice, and this Court rejects such a proposition. Such a determination is unnecessary, however, in light of the fact that this issue is totally new to the Court's consideration. It has never been mentioned in the pleadings and was omitted from the pretrial order as an issue of fact or an issue of law. It will not, therefore, be considered.

7. The employer has the burden of proving whether an employee is exempt as a bona fide executive administrative or professional employee pursuant to section 13(a)(1) of the Act. *Walling v. General Industries Co.*, 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947); *Tobin v. Frost-Arnett Co.*, 34 CCH Lab.Cas. ¶ 71,220 (W.D.Tenn. 1958), *aff'd per curiam*, 264 F.2d 246 (6th Cir. 1959).

8. The plaintiff is authorized in section 13(a)(1) of the Act to "define and to limit" by regulation, the terms "executive," "administrative," and "professional." The regulations so promulgated are valid and binding and have the force and effect of law. *Hodgson v. Barge, Waggoner and Sumner, Inc.*, 71 CCH Lab.Cas. ¶ 32,901 (M.D.Tenn.1972), *aff'd per curiam*, 477 F.2d 598 (6th Cir. 1973).

9. The test set out in 29 C.F.R. § 541 for the purpose of defining and delimiting the terms "executive," "administrative," and "professional" are conjunctively stated and each and every test must be satisfied to establish the exemption. *Walling v. General Industries Co., supra; Hodgson v. Barge, Waggoner and Sumner, Inc., supra.*

10. Applying the six conjunctive requisites of 29 C.F.R. § 541.1 to Messrs Adcock and Hunter, the Court finds:

(a) their primary duty was the management of the mechanical function of the bowling center, a subdivision of the whole enterprise;

(b) each regularly supervised the work of two or more employees therein;

(c) their recommendations as to the hiring and firing of "pin chasers" were "given particular weight";

(d) each customarily and regularly exercised discretionary powers over the equipment, the ordering of parts, the repair and maintenance of the machines, and the allocation of work among the "pin chasers";

(e) neither devoted as much as 40 percent of his hours of work to activities which are not directly and closely related to the performance of (a) through (d) above; and

(f) for all relevant periods David Hunter was compensated on a salary basis of not less than $155 per week, and Leland Adcock was so compensated after September 16, 1977.

11. David Hunter was an exempt employee under the provisions of 29 C.F.R. § 541.1 for the entire time in question, and the plaintiffs are not entitled to any relief as to him.

12. Leland Adcock was an exempt employee under the provisions of 29 C.F.R. § 541.1 after September 16, 1977, and no relief should be granted for the time since such date. For the period of time from February 18, 1977, until September 16, 1977, the hours of work of this employee are in serious question, as set out in Finding of Fact No. 10 above. Since the employer has failed to keep proper records for this period of time, plaintiff has sustained its burden by proving, as a matter of just and reasonable inference, the amount and extent of improperly compensated overtime. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). Defendants are indebted to Leland Adcock in the sum of $1,764.40.

13. The defendants are indebted under the Act to each of the persons referred to in Finding of Fact No. 8 hereof for unpaid minimum wages in the amounts set forth opposite his or her name.

14. The defendants also failed to pay James Caroland in compliance with section 7 of the Act and are indebted to him in the amount of $295.23 for the payroll periods ending September 16, 1977, through December 9, 1977.

15. The defendants have failed to carry their burden of demonstrating in the case of Caroland or Adcock, or those employees listed in Finding of Fact No. 8, that their failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon them more than a compensatory award. *McClanahan v. Mathews*, 440 F.2d 320 (6th Cir. 1971).

**518**

Plaintiff is, therefore, entitled to liquidated damages in an amount equal to the awards to Caroland and Adcock, and those employees listed in Finding of Fact No. 8, or an additional $2,923.26.

16. The plaintiff is entitled to an injunction restraining the defendants from withholding back wages due employees listed in this memorandum, together with an injunction against future violations of the minimum wage, overtime compensation, and recordkeeping provisions of the Act.

17. When an employer has committed a clear violation of the Act without any valid excuse or explanation, an injunction should and will be issued. An injunction subjects the defendants to no penalty or hardship. It merely requires him to do what the Act requires anyhow. *Goldberg v. Cockrell,* 303 F.2d 811 (5th Cir. 1962); *Mitchell v. Pidcock,* 299 F.2d 281 (5th Cir. 1962).

18. Plaintiff is entitled to judgment for the amounts set out herein together with liquidated damages in an amount equal to the back wages for distribution to the employees concerned or to their estates and any money not so paid within a period of one year from the date of plaintiff's receipt of such because of inability to locate the proper person or because of their refusal to accept it, shall be deposited with the Clerk of this Court who shall be directed to forthwith deposit such money with the Treasurer of the United States pursuant to 28 U.S.C. § 2041. *Usery v. Godwin Hardware, Inc.,* 80 CCH Lab.Cas. ¶ 33,466 (W.D.Mich.1976).