STATE OF MAINE                          SUPERIOR COURT
                                        CIVIL ACTION
KENNEBEC, ss.                           DOCKET NO. CV-02-131
                                        SKS - KEN - 2/3/2004

RCHARD AVERY,

        Plaintiff

    v.                                  **JUDGMENT**

KENNEBEC MILLWORK, INC.,                DONALD L. GARBRECHT
                                        LAW LIBRARY

                                        MAR 19 2004

        Defendant

    This matter came on for trial before the court without a jury, on the plaintiff's

complaint seeking damages pursuant to provisions of Title 26 M.R.S.A. concerning

payment of overtime and reimbursement for unused vacation time. The court has fully

considered all of the testimonial and other evidence and makes the following findings

of fact and analysis.

## Findings

    Plaintiff Richard Avery began work at defendant Kennebec Millwork, Inc. (KMI)

in 1992. Avery had previously been employed as a construction superintendent for the

firm of Pelletier & Flanagan, which firm had the same ownership as KMI. As a

"construction superintendent," Avery was clearly a member of management at Pelletier

& Flanagan, but his employment for KMI involved more his skill as a carpenter.

    For his first two years of employment at KMI, Avery was paid $11 per hour plus

time and a half for overtime over 40 hours per week. However, at some point in 1994

this compensation changed. Under the new plan, Avery received a "salary" of $500 to

$550 per week for the first 45 hours of employment during that week. For work over 45

hours a week, Avery would receive $16 per hour. In addition, Avery received the sum

of $850 per quarter as reimbursement for his own medical insurance premium, two

weeks a year paid vacation and the use of a company vehicle. Avery was one of two KMI employees to be compensated on this hybrid salary/hourly program; the other being the General Manager, James Clough. Overtime was the rule rather than the exception at KMI with Avery working an average workweek in excess of 60 hours. However, there were isolated weeks when Avery worked less than 40 hours or less than eight hours during a given workday. For these periods, Avery's "salary" was reduced on an hourly basis.

The nature of Avery's work for KMI was of a mixed character. His primary responsibility was making cabinets, tables, desks and counters, which were constructed in the shop and installed by others on site. When Avery began working with KMI in 1992, the firm was being run by Silas Chilton, with Jamie Clough as the second in command. When Chilton left later in 1992, Clough moved up to the General Manager position. According to Avery's testimony, at some point he kind of got "pushed" into the shop supervisor position, though no one ever told him that he was number two in the shop hierarchy. Clough was clearly managing the entire operation when he was at the shop, included hiring and firing employees, providing discipline when necessary and deciding pay raises. Clough also did the sales work and purchasing. In contrast, Avery had no authority to hire, fire, discipline or determine pay and only directed work when Clough was not present. During his 60-hour week, only about 20% of the time was spent by Avery in quasi-management activities.

On May 5, 1999, Avery left KMI. After he left, a disagreement arose between Avery and KMI concerning an offset in his final check for a medical insurance payment and Avery's claim for two weeks of unused vacation time. Avery sought payment for the vacation time and for underpayment of overtime retroactive to March 7, 1996, prior

to which any claim would be barred by the statute of limitations. The present suit resulted.

## Discussion

### Overtime Issue

Under Maine's Minimum Wage Law, employers are required to pay their hourly employees "time and a half" for any work over 40 hours per week. 26 M.R.S.A. § 664(3). However, the definition of "employee" for these purposes includes an exemption for "a salaried employee who works in a bonafide executive, administrative or professional capacity and whose regular compensation, when converted to an annual rate, exceeds 3,000 times the State's minimum hourly wage." 26 M.R.S.A. § 663(3)(K).

Avery argues that the pay scheme may make him a "salaried employee," but he was not working in a "bonafide executive administrative or professional capacity" and therefore he was entitled by statute to time and a half for all of his work over 40 hours a week and was underpaid. Avery seeks reimbursement for the amount he believes he was underpaid, plus statutory enhancements.[1] In making determinations of whether Avery is an exempt "administrative" or "executive" employee, the court may be guided by comparable federal statutes, regulations and case law. *Gordon v. Maine Central Railroad*, 657 A.2d 785, 786 (Me. 1995).

In the present case, the evidence is mixed. Among the evidence pointing to Avery's employment as being executive or administrative include the following: (1) the scheme of mixed payment for labor which he shared only with the general manager; (2)

---

[1] Avery cites 26 M.R.S.A. § 626, concerning payment of wages at the cessation of employment, as the statutory basis for this suit. That section contains mandatory treble damages plus reasonable interest, costs and reasonable attorney's fees for a successfully plaintiff. However, these enhancements are not all available for minimum wage violations, which are in a different subchapter. The proper measure of damages is found in 26 M.R.S.A. § 670 which requires double damages and cost of suit including attorney's fees. Damages for unpaid accrued vacation time would come under section 626, but overtime violations would come under section 670.

authority to sign checks for deliveries; and (3) acting as the person in charge when the general manager was absent. On the other hand, evidence to the contrary includes: (1) 80% of Avery's time was spent in manual labor on his own assigned projects; (2) Avery exercised none of the personnel decisions typical of an executive or administrator such as hiring, firing, discipline and raises; and (3) he had no executive or administrative responsibilities when the general manager was present and in charge. Drawing from federal regulations to analyze the evidence, there are two alternative tests depending upon the employee's income. If the employee makes a certain amount ($250 per week in the federal regulations), then a "short test" applies and one need only determine whether the employee's "primary duty" is management (or executive) and whether at least two other employees are supervised. 29 C.F.R. § 541.1(f). If the employee makes under the cutoff amount, then the "long test" is applied. This test includes the two criteria of the short test plus determination of authority to hire or fire, exercise of discretionary powers and at least 60% of their time devoted to management duties. 29 C.F.R. § 541.1(a). Since Avery's pay exceeded the cutoff level applicable in Maine at the time, use of the "short test" is appropriate.

KMI also cites *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir. 1982) as a guide. In that case, the First Circuit Court of Appeals reversed a decision of the federal District Court concerning the exempt status of assistant managers in Burger King Restaurants. Because some assistant managers made more and some less than the cutoff point, the court analyzed the evidence using both the short and long tests. *Donovan* is immediately distinguishable from the present case by the fact that in *Donovan* each restaurant had one manager and two salaried assistant managers, each of whom was solely in charge of a crew of hourly employees in each of three shifts. In other words, the assistant mangers were totally in charge during their shifts. However,

the analysis is still helpful for its discussion for the term "primary duty" under the short test. The court rejected a strict time or 50% rule in determining what constituted "<u>primary</u> duty" and suggested that an employee's primary duty might be executive or management even if the majority of the employee's work was routine and non-exempt. The court suggested instead that "the more natural reading of "primary" is "principal" or "chief," not "over one-half." *Id.* at 226.

Applying the "short test" as clarified by *Donovan,* to the facts, this court concludes that Avery's principal or chief duty and therefore his "primary duty" was not an executive or administrative one. Avery may have been compensated as if he were a member of the management team, but his principal or chief work was building custom cabinets and other wooden furnishings. Mr. Clough's testimony left no doubt that he was the "Boss" and that Avery was a senior employee more or less relegated to keeping his eye on things and signing for deliveries while Clough was away from the shop. Therefore, the court also concludes that Avery was not exempt from the minimum wage -- time and half for overtime over 40 hours -- requirements of the statute and should have received additional pay during the time in question.

### Vacation Pay

Although the evidence is scarce due to a lack of separate records as to when vacations were taken, the court is satisfied by a preponderance of the evidence that Avery was entitled to be compensated for two weeks of accrued vacation at the time he left KMI and that he was only paid for one of these weeks due to an improper offset for a medical insurance payment. With regard to this underpayment, section 626 is applicable including treble damages, cost of suit and reasonable attorney's fees.

## Damages

Calculation of the damages to which Avery is entitled because of KMI's failure to properly pay overtime is made difficult by records which purport to show one thing while actually something else was occuring. For example, during the period until sometime in 1998, Avery's "salary" for the first 45 hours of his work each week and the overtime payments for work over 45 hours a week were paid out of separate bank accounts at different banks, for reasons that are not clear to the court. Another example of this confusion is illustrated in exhibit 55, which is Avery's last paycheck from KMI. The paycheck stub indicates that Avery was paid two hourly rates: rate 1 for his regular or "salary" portion (40 hours x $13.75 = $550); and rate 2 for overtime (15 hours x $17.50 = $262.50). However, the handwritten note at the bottom of the check indicates that Avery was actually paid for 60 hours of work rather than the 55 hours indicated in the printed portion. In fact what happened was that Avery was not paid $13.75 an hour for 40 hours of work; he was paid $12.22 an hour for 45 hours of work, followed by 15 hours of overtime for the total of 60 hours. These disconnected pay checks and misleading pay stubs, and the confusion they generate, are the result of decisions by KMI, not Avery. In order to arrive at a fair approximation of the underpaid overtime, it is necessary to reconstruct and the court finds that using an average of hours worked per week of 64.6 – as calculated by the plaintiff – is appropriate for this purpose.

As noted above, Avery began working at $11 an hour for a 40-hour week and time and a half ($16 per hour) for hours above 40. When KMI switched Avery to the "salary with overtime" schedule, the pay rate remained approximately the same ($500 for a 45 hour week = $11.11 an hour; time and a half equals $16.66 an hour). Therefore, during the period that Avery was paid $500 for the first 45 hours of work, the only underpayment was approximately $5 an hour for the five hours between 40 and 45.

Therefore, Avery was underpaid $55 for the 11 weeks during which his "salary" for the 45 hours was $500.

In mid-1996 his salary was increased to $550 for the first 45 hours, which equates to $12.22 an hour or $18.33 an hour for overtime. For weeks under this higher rate, Avery was underpaid by $6.11 per hour for the five hours from 40 to 45 ($30.55) and the difference between $18.33 an hour and 16 cents per hour ($2.33) times the number of hours in excess of 45 (19.6). Therefore, the total underpayment per week would have been $76.22. There were 32 of these weeks in 1996 ($2,439) for a total reasonably inferred underpayment in 1996 of $2,494. In 1997 and 1998, the estimated underpayment for 50 non-vacation weeks, using the same estimated average work time, equaled $3,811. In 1999, Avery worked 17 non-vacation weeks or $1,296. Therefore, the total amount underpaid for overtime for the period in question was $11,412. Adding an additional amount as liquidated damages in accordance with section 670 results in total damages of $22,824.

With regard to damages for the improperly withheld vacation time, the amount still due is $560. The court determines a reasonable rate of interest to be 5% per annum considering the rates available during the period. In accordance with section 626, Avery is entitled to the withheld wages ($560), reasonable interest ($140), and twice the unpaid wages as liquidated damages, plus costs and a reasonable attorney's fee.

Adding together the underpaid overtime and unpaid vacation pay, plus the statutory enhancements, results in total damages of $23,944, and this will be the amount of the judgment. An award of costs and reasonable attorney's fees will be made upon submission of an accounting for the costs and appropriate attorney's affidavit

Therefore, for the reasons set forth above the entry will be:

Judgment for the plaintiff in the amount of $23,944 plus costs and reasonable attorney's fee and post-judgment interest.

Dated: February 3, 2004

S. Kirk Studstrup
Justice, Superior Court

RICHARD AVERY - PLAINTIFF
RR 1, BOX 1083
WINDSOR ME 04363
Attorney for: RICHARD AVERY
C H SPURLING
SPURLING LAW OFFICES
TWO CHURCH ST
GARDINER ME 04345


vs
KENNEBEC MILLWORK INC - DEFENDANT
P.O. BOX 402
BELGRADE ME 04917
Attorney for: KENNEBEC MILLWORK INC
DAVID RAY
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2002-00131


**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: OTHER STATUTORY ACTIONS
Filing Date: 07/18/2002

## Docket Events:

07/18/2002 FILING DOCUMENT - COMPLAINT FILED ON 07/18/2002

07/18/2002 Party(s):  RICHARD AVERY
           ATTORNEY - RETAINED ENTERED ON 07/18/2002
           Plaintiff's Attorney: C H SPURLING

07/18/2002 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 07/18/2002
           Plaintiff's Attorney:  C H SPURLING
           MAILED TO ATTY. OF RECORD.

07/18/2002 Party(s):  KENNEBEC MILLWORK INC
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 07/18/2002

07/18/2002 Party(s):  KENNEBEC MILLWORK INC
           SUMMONS/SERVICE - ACK OF RECEIPT OF SUMM/COMP SERVED ON 03/07/2002
           Defendant's Attorney: C H SPURLING
           ATTY. FOR DEFENDANT, KENNEBEC MILLWORK, INC.

08/13/2002 Party(s):  KENNEBEC MILLWORK INC
           MOTION - AFFID & REQUEST DEFAULT/JUDG FILED ON 08/13/2002
           Plaintiff's Attorney:  C H SPURLING

08/14/2002 Party(s):  KENNEBEC MILLWORK INC
           MOTION - AFFID & REQUEST DEFAULT/JUDG ENTERED ON 08/14/2002
           DEFAULT ENTERED AGAINST DEFENDANT KENNEBEC MILLWORK INC. COPIES MAILED TO ATTYS. OF
           RECORD.

08/14/2002 Party(s):  KENNEBEC MILLWORK INC
           RESPONSIVE PLEADING - ANSWER FILED ON 08/13/2002
           Defendant's Attorney: DAVID RAY