Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff, Appellee,

v.

BURGER KING CORPORATION, Defendant, Appellant.

No. 81–1502.

United States Court of Appeals, First Circuit.

Argued Dec. 11, 1981.

Decided Feb. 22, 1982.

Martin D. Heyert, New York City, with whom Paul L. Bressan and Kelley, Drye & Warren, New York City, were on brief, for appellant.

Gregory O'Duden, Atty., Washington, D. C., with whom T. Timothy Ryan, Jr., Sol. of Labor, Albert H. Ross, Regional Sol., Beate Bloch, Associate Sol., and Mary-Helen Mautner, Atty., Washington, D. C., were on brief, for appellee.

Before CAMPBELL and BOWNES, Circuit Judges, and WYZANSKI,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Burger King appeals from a judgment of the district court enjoining it from violating provisions of the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. §§ 201 *et seq.*, and from withholding back pay for overtime due certain of its assistant managers. After a bench trial, the district court concluded that the assistant managers were covered by the Act, and therefore entitled to be paid at one and one-half times their regular rate for overtime hours. *See* FLSA § 7(a), 29 U.S.C. § 207(a). Burger King argued that its assistant managers were "employed in a bona fide executive . . . capacity," and therefore exempt from the pay requirements of the Act. *See* FLSA § 13(a)(1), 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.1. On appeal, it repeats this argument, and also urges that the district court improperly limited the number of witnesses called at trial, and that the court's injunction was excessive in its geographic scope.

## I.

Burger King fast-food restaurants are operated nationwide. Some of the restaurants are company-owned, others are franchises. At issue in this case are 44 company-owned restaurants in Massachusetts and Connecticut. The restaurants are each staffed by a salaried manager, two salaried assistant managers, and a large crew of hourly employees. Except for brief periods

of overlap and Fridays and Saturdays, only one of the three salaried persons is on duty at any one time. The manager usually works day shifts, while the assistant managers normally work swing and night shifts. The manager or assistant manager on duty supervises the hourly employees, up to 25 of whom may be working at any one time.

While on duty, the assistant manager enjoys decision-making authority roughly commensurate with that of the manager. He schedules employees, assigns work, oversees product quality, and speaks with customers. Assistant managers also train employees, determine the quantity of food to be produced at any given time, and perform various recordkeeping, inventory, and cash reconciliation duties. Many of these tasks are governed by highly detailed, step-by-step instructions contained in Burger King's "Manual of Operating Data," and admit of little or no variation. Assistant managers also spend a portion of their time performing many of the same tasks as hourly employees, such as taking orders, preparing food, and "expediting" orders, that is, filling the orders and handing them to the customers. These tasks are also spelled out in great detail in the Manual of Operating Data.

The crux of Burger King's case was its affirmative defense that the assistant managers were employed in a "bona fide executive . . . capacity" as that term is used in section 13(a)(1), and thus exempt from the Act. Regulations promulgated by the Secretary of Labor under authority of section 13(a)(1) specify the requirements for this exemption. In the case of employees earning at least $250 per week, two requirements only must be met: the employees' "primary duty" must be management, and they must regularly direct the work of at least two other employees. 29 C.F.R. § 541.1(f).[1] This is known as the "short test." In the case of employees earning more than $155, but less than $250, per

---

* Of the District of Massachusetts, sitting by designation.

1. *See* note 3, *infra.*

week, there is a "long test." This includes three requirements *in addition* to the two contained in the short test: the employees must have authority to hire or fire, or at least their recommendations must be given "particular weight"; they must "customarily and regularly exercise[] discretionary powers"; and they must not devote more than 40 percent[2] of their time to activities not "closely related" to their management duties. 29 C.F.R. § 541.1(a)–(f).[3] The district court found that the assistant managers here failed to meet the "primary duty" requirement common to both tests. And in the case of assistant managers whose pay scale made them subject to the "long test," it found they lacked, in addition, the authority to hire and fire and the necessary discretionary powers, and also that they devoted more than 40 percent of their time to non-managerial duties. It therefore ruled that neither those assistant managers to whom the short test applied, nor those to whom the long test applied, were exempt from the Act. The court ordered Burger King to pay back wages to 246 assistant managers in Massachusetts and Connecticut for past overtime hours, and also enjoined

Burger King from violating the Act in its company-owned restaurants without limitation as to their location.

## II.

■ Burger King argues first that the district court improperly restricted the evidence it could introduce at trial, in two ways. First, it contends that the court erroneously limited testimony to that concerning only six specific restaurants, out of a total of 44 whose practices were in issue. This was done in order to limit the number of witnesses to manageable proportions (the government had initially stated that it might have to call as many as 2,000 witnesses if full testimony about each restaurant were required). The district court thought the limitation on the number of restaurants a proper approach in light of the basic similarities between the individual restaurants. Counsel for Burger King appears to have agreed to this. During the course of a pretrial conference requested by counsel for Burger King for the purpose, in his words, of "narrowing down the number of witnesses the government intends to call," the court stated,

2. The limitation for certain other types of establishments is 20 percent. 29 C.F.R. § 541.1(e). *See* note 3, *infra.*

3. The regulation in its entirety reads as follows:
 The term "employee employed in a bona fide executive * * * capacity" in section 13(a)(1) of the act shall mean any employee:
 (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and
 (b) Who customarily and regularly directs the work of two or more other employees therein; and
 (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
 (d) Who customarily and regularly exercises discretionary powers; and
 (e) Who does not devote more than 20 percent, or in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a)

through (d) of this section: *Provided,* That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20-percent interest in the enterprise in which he is employed; and
 (f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week (or $130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities: *Provided,* That an employee who is compensated on a salary basis at a rate of not less than $250 per week (or $200 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

I will not listen to witnesses from more than five [later six] stores. I don't care what five stores they are. The five stores should be enough to give me a feeling for what is going on in these places.

Counsel for Burger King replied, "I agree." Especially in light of this concession, we do not accept Burger King's present complaint that the restaurants are so different that it should have been allowed to present testimony concerning more of them. The court later chose three restaurants each from lists prepared by the government and Burger King. While testimony tended to show that one of the stores chosen by the government was unrepresentative due to labor problems, the court's method of deciding on the particular restaurants—in the absence of agreement among the parties—seems fair and equitable.[4]

■ Second, Burger King argues that during the trial, the court improperly limited the number of witnesses it could call with respect to the six particular restaurants. Burger King attempted to call 26 witnesses, but after hearing six, the court concluded that further witnesses would not be helpful to it. Burger King and the government then stipulated that 20 named individuals "would give substantially the same testimony regarding the work they did or do as Assistant Managers" as was given by three of Burger King's earlier witnesses. The court has broad discretion under Fed.R.Evid. 403 to prevent the "needless presentation of cumulative evidence." *See* 10 Moore's Federal Practice § 403.13 (1981). We see no abuse of discretion here. The court found that all of the testimony

thus far had been "substantially the same," and counsel for Burger King agreed with this both at trial and in the stipulation. The evidence was thus admittedly cumulative, and it was within the province of the district court to exclude it.[5]

### III.

We turn next to the question of whether the short test assistant managers (*i.e.*, those earning at least $250 per week) were properly held by the district court to be non-exempt and hence within the coverage of the Act. This turns on whether they have management as their "primary duty." 29 C.F.R. § 541.1(f). We hold that the district court erred in concluding that the assistant managers did not meet this requirement.[6]

The district court found that in the absence of the manager, the assistant manager on duty was "*de facto* in charge of the store." Burger King contends vigorously that this finding should be sufficient to demonstrate that the assistant managers satisfy the primary duty requirement. Under the regulations,

A determination of whether an employee has management as his primary duty must be based on all the facts of a particular case.... Time alone ... is not the sole test .... [Other] pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the wages paid other employees for the kind of nonexempt work performed by the supervisor.

---

4. Burger King has not claimed that the three restaurants selected from its list by the district court failed to present its strongest case.

5. Burger King also argues that in light of the stipulation, it was error for the court to refuse to credit the testimony of its witnesses (including those not called but listed in the stipulation) that they spent less than 40 percent of their time on activities unrelated to management. The stipulation, however, was not to the truth of the testimony, but merely to the fact that it would be given as stipulated. The court retained the right to choose between conflicting

versions, and here there was credible testimony contrary to that of the Burger King witnesses.

6. Assistant managers earning under $250, so-called long test assistant managers, have the same duties but, as previously stated, must meet three additional requirements for exemption. Long test personnel are discussed *infra*. In so far as long test personnel must also have management as a primary duty, our ruling here that that requirement was met applies equally to them.

29 C.F.R. § 541.103. Some of these factors quite clearly cut in favor of Burger King's contention, especially those related to freedom from supervision and a comparison of wages with other employees. The district court gave no explicit reason for its conclusion that the assistant managers did not have management as their primary duty, but in light of this regulation, two main explanations are possible. One is that it concluded that they do not exercise sufficient discretionary powers to be "managing"; the other is that they spend too much time on non-management tasks. Each of these is unpersuasive.

■ The supervision of other employees is clearly a management duty. *See* 29 C.F.R. § 541.102(b). The fact that Burger King has well-defined policies, and that tasks are spelled out in great detail, is insufficient to negate this conclusion. Ensuring that company policies are carried out constitutes the "very essence of supervisory work." *Anderson v. Federal Cartridge Corp.*, 62 F.Supp. 775, 781 (D.Minn.1945), *aff'd*, 156 F.2d 681 (8th Cir. 1946); *see also Wells v. Radio Corp. of America*, 77 F.Supp. 964 (S.D.N.Y.1948). While it may be that the assistant managers do not exercise sufficient discretionary powers to satisfy the long test requirement, 29 C.F.R. § 541.1(d), that requirement is not part of the short test. It cannot be denied that the supervisory work of the assistant managers qualifies as management under the regulations.

The more difficult question is whether such work is their "primary duty." The regulation states that "[i]n the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time." 29 C.F.R. § 541.103. There are two problems with this guideline. First, the more natural reading of "primary" is "principal" or "chief," not "over one-half." *Marshall v. Burger King Corp.*, 504 F.Supp. 404 (E.D.N.Y.1980), *cross-appeals pending*. Second, a strict time division is somewhat misleading here: one can still be "managing" if one is in charge, even while physically doing something else. The 50 percent rule seems better directed at situations where the employee's management and non-management functions are more clearly severable than they are here.

■ Indeed, the regulations recognize that the 50 percent rule is not conclusive. *See* 29 C.F.R. § 541.103, quoted *supra*. One of the examples given in section 541.103 corresponds quite closely to the picture we see of the Burger King assistant managers:

> For example, in some departments, or subdivisions of an establishment, an employee has broad responsibilities similar to those of the owner or manager of the establishment, but generally spends more than 50 percent of his time in production or sales work. While engaged in such work he supervises other employees, directs the work of warehouse and delivery men, approves advertising, orders merchandise, handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require. He will be considered to have management as his primary duty.

This example makes it quite clear that an employee can manage while performing other work, and that this other work does not negate the conclusion that his primary duty is management. If an employee is spending too great a portion of his time performing non-exempt tasks, then the 40 percent limitation of the long test, if applicable, may come into play. *See* 29 C.F.R. § 541.1(e). But as with the discretionary powers requirement, this is not an element of the short test.

■ Finally, the case law strongly supports the conclusion that the Burger King assistant managers have management as their primary duty. In *Rau v. Darling's Drug Store, Inc.*, 388 F.Supp. 877 (W.D.Pa. 1975), for example, the court held that an employee who was "in charge" of a drug store (excepting the prescription department) had management as her primary duty. *Id.*, at 881. This was so in spite of the fact that she was also the sole sales clerk in two departments, and did a considerable amount of routine, non-exempt

work ("more than fifty percent of her time was taken up with sales clerk work").[7] *Id.*, at 879. Moreover, she was unable to make any significant or substantial decisions on her own: the owner of the store made them all, including setting prices and wages. This case is well-reasoned support for the proposition that the person "in charge" of a store has management as his primary duty, even though he spends the majority of his time on non-exempt work and makes few significant decisions. In light of the district court's finding here that the assistant managers were "in charge" of the restaurant during their shifts, its conclusion that they do not have management as their primary duty cannot stand. *See also Wirtz v. Arcata Plywood Corp.*, 18 WH Cases 720 (E.D.Cal.1969) (manager of data processing department); *Marshall v. Hendersonville Bowling Center, Inc.*, 483 F.Supp. 510 (M.D. Tenn.1980) (bowling alley employees); *Walling v. General Industries Co.*, 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947) (boiler room supervisors); *Kelly v. Adroit, Inc.*, 480 F.Supp. 392 (E.D.Tenn.1979), *aff'd without opinion*, 657 F.2d 267 (6th Cir. 1981) (foreman); *McReynolds v. Pocahontas Corp.*, 192 F.2d 301 (4th Cir. 1951) (unsupervised foreman). Our conclusion that the assistant managers do have management as their primary duty is in accord with a similar case concerning Burger King restaurants in New York. *See Marshall v. Burger King Corp.*, 504 F.Supp. 404 (E.D.N.Y.1980), *cross-appeals pending.*

### IV.

█ We turn next to those assistant managers earning under $250 who must meet the additional requirements of the long test if Burger King's exemption claim is to be upheld. We affirm the district court's conclusion that these employees were not shown to have met all the requirements of the long test, and hence are non-exempt. The elements of the test are stated in the conjunctive, and therefore each element must be met to qualify for the

exemption. *See, e.g., Wirtz v. Patelos Door Corp.*, 280 F.Supp. 212, 215–16 (E.D.N.C. 1968). We conclude that the district court was not clearly erroneous in finding that assistant managers spent more than 40 percent of their time on activities not "closely related" to management, 29 C.F.R. § 541.-1(e), and therefore uphold the district court on this basis, without reaching its other grounds of decision.

Burger King argues only briefly that the court was clearly erroneous in its factual conclusion. We think the courts' conclusion is supportable. There was considerable testimony from assistant managers that the great majority of their time was spent on menial tasks. *See* footnote 5, *supra.* Burger King's primary argument is that the court erred in including certain tasks in the non-exempt (not closely related to management) category. This argument in turn is broken into two branches: first, that certain tasks not performed by the hourly crew, such as cash reconciliation, were improperly classified as non-exempt, and second, that tasks performed by the crew as well as by the assistant managers, such as taking orders, were similarly improperly classified.

█ The first contention may be dealt with briefly. Even if it is true that those tasks performed only by the assistant managers are properly classified as exempt—a question we do not decide—it is clear from the court's opinion that it did not include time spent on these tasks in concluding that the 40 percent limit was surpassed:

> I find, despite testimony to the contrary, which I do not believe, that assistant managers do in fact in most of the Burger King Stores spend more than 40% of their working time in routine production tasks which are not of a managerial nature or caliber. I find those tasks are mundane and *exactly the same as those performed by concededly hourly employees.*

(Emphasis added.) The court thus found the 40 percent limit was broken even when

---

7. Indeed, the court concluded that she was not an exempt executive because she did not meet

the time requirement under the long test, 29 C.F.R. § 541.1(e).

considering only the time spent by the assistant managers on the same tasks as performed by the hourly crew. We thus turn to the question of whether that work was properly classified as non-exempt.

 Burger King argues that this work cannot count as non-exempt because the assistant managers are still managing the restaurant and supervising the crew, even while performing those tasks. This line of reasoning has merit for purposes of deciding whether they meet the primary duty requirement, *see* Part III, *supra*, but misses the point as to the different, 40 percent limitation requirement. The latter measures the amount of time which one who may otherwise have management as his primary duty devotes to non-management tasks. Someone whose primary duty is management may still fail to qualify under the long test if his managerial status coexists with the performance of a significant amount of menial work, as in the case of a working supervisor or "strawboss." The Secretary's regulations make this plain. They provide that the "primary purpose" of the time percentage limitation (applicable, it will be remembered, to lower paid, long test personnel only) is to distinguish between bona fide executives and those working foremen and supervisors "who regularly perform[ ] 'production' work or other work which is unrelated or only remotely related to [their] supervisory activities." 29 C.F.R. § 541.115(a). The regulation continues,

> (b) *One type of working foreman or working supervisor most commonly found in industry works alongside his subordinates. Such employees, sometimes known as strawbosses, or gang or group leaders perform the same kind of work as that performed by their subordinates, and also carry on supervisory functions.* Clearly, the work of the same nature as that performed by the employees' subordinates must be counted as nonexempt work and if the amount of such work performed is substantial the exemption does not apply. ("Substantial," as used in

this section, means more than 20 percent. See discussion of the 20-percent limitation on non-exempt work in § 541.112.) *A foreman in a dress shop, for example, who operates a sewing machine to produce the product is performing clearly non-exempt work.* However, this should not be confused with the operation of a sewing machine by a foreman to instruct his subordinates in the making of a new product, such as a garment, before it goes into production.

(Emphasis added.) The regulation thus recognizes that some supervisors work alongside their crews, doing the same work as the crews, while supervising them as well. It nonetheless counts the time spent on non-exempt work toward the 40 percent limitation. This seems to describe the position of the Burger King assistant managers as found by the district court, although, of course, the concept is relevant only in those individual cases where because of weekly earnings under $250, the long rather than short test must be applied.

It needs to be emphasized that the primary duty and 40 percent requirements satisfy entirely separate if complementary concerns. The former requirement is aimed at distinguishing those whose principal responsibility is management from others. The latter requirement, which under the long test must independently be satisfied, *see* note 3, *supra*, ensures that even those who pass the primary duty test are subject to the protections of the Act if more than a certain portion of their time is devoted to performing the same tasks as those performed by non-exempt subordinates. The interpretation proposed by Burger King would eviscerate this distinction, and in effect merge the time limitation into the primary duty requirement, making it surplusage. In the face of the clear language to the contrary, we decline to adopt such a reading of the regulation, and therefore uphold the district court with respect to those assistant managers covered by the long test.[8]

---

**8.** The cases cited by Burger King do not establish the correctness of its position. In most of

them, such as *Paddy v. Smith*, 20 WH Cases 1176 (W.D.La.1973), the courts based their con-

## V.

Although the district court noted in its memorandum that "[t]his case concerns 44 retail restaurants owned by Burger King ... in either Massachusetts or Connecticut," it enjoined Burger King from violating the FLSA with respect to assistant managers without geographic limitation, that is, nationwide. This was an abuse of discretion. During discovery, the government admitted that it sought relief only with respect to the Massachusetts and Connecticut stores. The case was tried on that basis. There was no evidence presented on the issue of whether Burger King was violating the Act at other restaurants.[9] The injunction must therefore be narrowed to apply only to the Massachusetts and Connecticut restaurants. *See, e.g., Hodgson v. Corning Glass Works,* 474 F.2d 226, 236–37 (2d Cir. 1973), *aff'd,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

The injunction is accordingly vacated insofar as it applies to assistant managers earning at least $250 per week, and insofar as it applies to restaurants outside Massachusetts and Connecticut. In all other respects, the judgment of the district court is affirmed.

*So ordered.*

---

clusions on the fact that the time limitation was not exceeded, not that time spent on non-exempt tasks could not be counted if the employee was still supervising at the same time. Other cases, such as *Anderson v. Federal Cartridge Corp.,* 19 Labor Cases ¶ 66,093 (D.Minn.1950), where the supervisors' non-exempt work was performed at irregular or sporadic intervals for brief periods of time, are clearly inapposite. Finally, in light of the district court's finding that training involved very little time, cases relying on the time spent training while performing the same tasks as hourly employees, such as *Brown v. Consolidated Vultee Aircraft Corp.,* 80 F.Supp. 257 (W.D.Ky.1948), are similarly unavailing.

9. The Manual of Operating Data, applicable chainwide, instructs assistant managers to comply with the 40 percent time limitation. No witness testified that the company's actual policy was to violate this requirement throughout its chain.